Steven R. Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Graham Lambert, SBN 303056
(gl@haffnerlawyers.com)
**HAFFNER LAW PC**
445 South Figueroa Street, Suite 2625
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY GERRITSEN, SARA ELICE, JUSTIN BAGLEY and ELIZABETH BAGLEY, and MARCUS SWINDLE individuals; on behalf of themselves and all others similarly situated;<br><br>               Plaintiffs,<br><br>   v.<br><br>FCA US, LLC,<br><br>               Defendant. | Case No.: 2:19-cv-08268-AB-KS<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California's Consumers Legal Remedies Act<br>(2)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(3)  Violations of Unfair Competition Law<br>(4)  Breach of Express Warranty<br>(5)  Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(6)  Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

1.     Plaintiffs Corey Gerritsen ("Gerritsen") Sara Elice ("Elice"), Justin Bagley and Elizabeth Bagley ("Bagleys"), and Marcus Swindle ("Swindle") (collectively "Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any 2017-2019 Chrysler Pacifica or 300 Vehicles equipped with FCA US. LLC's "UConnect" infotainment system ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by FCA US, LLC. ("FCA" or "Defendant"). Plaintiffs allege as follows:

## INTRODUCTION

2.     This is a consumer class action concerning FCA's failure to disclose material facts regarding a safety defect in the Class Vehicles sold to consumers and FCA's failure to fulfill its warranty obligations with respect to that defect.

3.     There are specific standards that all automobile manufacturers must comply with. This case is based on FCA's breach of these standards. When FCA sells a vehicle, it has a duty to the customer that the vehicle operates properly and safely. When FCA discovers a defect, it must disclose the defect when it sells its vehicles and has an obligation to correct the defect or cease selling the vehicles. When FCA touts the benefits of a new technology in its vehicles, it must test the technology to ensure that it functions properly and as represented. When FCA provides warranties to customers, FCA is bound to stand by them. FCA failed to meet all of these standards when it sold or leased the putative Class Vehicles equipped with the defective UConnect "infotainment" system.

4.     FCA manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles' UConnect infotainment system was defective. Specifically, the Uconnect system is designed and or manufactured with screens, including their operating software and routing modules, that suffer from freezing, loss of back up camera functionality, loss of navigation system functionality, black screens, repeated unintentional reboots, and general lack of

1   operation ("Uconnect Defect"). The UConnect Defect results in the need for
2   frequent software updates and expensive replacements of screens and related
3   components. FCA knew about the deficiencies of the UConnect well before
4   Plaintiffs' purchased their Class Vehicles.

5        5.    FCA's predecessor, Chrysler Group, first introduced the UConnect in
6   2002 as an aftermarket Bluetooth system that could be factory-installed.

7        6.    In 2004, Chrysler Group first equipped its UConnect system in
8   Chrysler vehicles. Chrysler Group touted it as an innovative new technology to be
9   introduced in the 2005 Chrysler 300.

10       7.    In 2008, Chrysler, LLC, another predecessor of FCA and successor
11  entity to Chrysler Group bundled what it called its "innovative consumer
12  technologies under one umbrella – 'uconnect.'" The system included the phone
13  connection, uconnect tunes, uconnect gps, uconnect studios and uconnect web.

14       8.    In 2011, FCA released UConnect Touch, including a touchscreen
15  touted as being easier to use.[1]

16       9.    FCA released the fourth generation of the UConnect in the 2015
17  Chrysler 300, dubbed the "UConnect 8.4A" and premium "UConnect 8.4AN"
18  systems with 8.4-inch touchscreen interfaces.

19       10.   On information and belief, in all forms of the UConnect 8.4 uses the
20  same operating software and routing modules.

21       11.   With the 2017 Chrysler Pacifica, FCA expanded the UConnect system
22  to include what FCA called "UConnect Theater" which was a rear seat
23  entertainment system using the UConnect technology providing two 10-inch
24  touchscreens located on the back of the front seat headrests, in addition to the 8.4-
25  inch UConnect 8.4 and 8.4N systems utilized by the driver.[2]

---

[1] "Customers Drive Development of Uconnect Touch," Mayes, Eric, June 21, 2011;
https://media.fcanorthamerica.com/newsrelease.do?id=11011&mid=102
[2] "All-new 2017 Chrysler Pacifica Offers Latest, Innovative Uconnect Systems and
Services," Kiino, Ronald and Kristin Starnes, January 11, 2016;
https://media.fcanorthamerica.com/newsrelease.do?jd=17220&mid=102

12.     Despite FCA (and its predecessors) consistently touting each iteration of the Uconnect as a technological marvel, that provides ease, safety and piece-of-mind for purchasers, the systems have been plagued by problems from the beginning. In fact, prior to the fourth generation units in the Class Vehicles, FCA issued at least two (2) Technical Service Bulletins ("TSBs"), which are manufacturer communications to dealers purporting to provide repair instructions for known defects, for the first generation of UConnect, seven (7) for the second generation, and fourteen (14) for the third generation. Though FCA and its predecessors touted each iteration of the Uconnect as an upgrade to the prior generation, the UConnect was actually getting worse, culminating in its worst iteration of all, the fourth generation, which is in the Class Vehicles.

13.     The fourth generation has been subject to at least seventeen (17) TSBs, manufacturer communications, or recalls since its release, all of which are described in detail below. Several of these communications specifically contemplate safety-related failures like loss of backup camera, which in 2018 the National Highway Traffic Safety Administration ("NHTSA") mandated in all passenger vehicles.

14.     The UConnect Defect is inherent in each Class Vehicle and was present in each vehicle at the time of sale.

15.     FCA undertook affirmative measures to conceal the UConnect Defect and other malfunctions through, among other things, TSBs, manufacturer communications, recalls and/or software updates, that FCA issues to its authorized repair facilities and dealers. These communications confirmed FCA's knowledge of the UConnect Defect, but FCA disregarded its importance.

16.     FCA was aware of the UConnect Defect from the first three generations of the technology, pre-production testing, design failure mode analysis, calls to its customer service hotline, and customer complaints made to dealers. However, this knowledge and information was exclusively in the possession of FCA and its network of dealers and, therefore, unavailable to consumers.

17.     The Uconnect Defect is material to consumers because it poses a serious safety concern. As attested by Class Members in scores of complaints to the National Highway Traffic Safety Administration ("NHTSA"), and other online forums, the UConnect Defect can result in a loss of backup camera, loss of navigation, black screens, and inadvertent reboots among other failure modes.  The failure of the backup camera and navigation system puts lives at risk. A faulty backup-camera leaves drivers unable to see small children, or small or wheelchair-using adults behind their vehicles.  A malfunctioning navigation system requires drivers to rely on their phones for navigation, which increases distraction and the risk of an accident and may violate handsfree laws.

18.     The UConnect Defect is also material because consumers incur significant and unexpected repair costs. FCA's failure to disclose, at the time of purchase, the UConnect's marked tendency to fail is material because no reasonable consumer expects to spend hundreds, if not thousands, of dollars to repair or replace the Uconnect Defects in their vehicles.

19.     Had FCA disclosed the UConnect Defect, Plaintiffs and Class Members would not have purchased the Class Vehicles or would have paid less for them because a vehicle with a known defect is worth less than a comparable vehicle without that defect.

## THE PARTIES

### Plaintiffs COREY GERRITSEN and SARA ELICE

20.     Plaintiffs Gerritsen and Elice are California citizens who reside in Los Angeles, California.

21.     On or around March 28, 2018, Plaintiffs Gerritsen and Elice purchased a new 2018 Chrysler Pacifica equipped with UConnect from Rydell Chrysler Dodge Jeep Ram, an authorized FCA dealer in San Fernando, California.

22.     Plaintiffs Gerritsen and Elice purchased their vehicle primarily for personal, family, or household use.

23.     Passenger safety and vehicle reliability were important factors in Plaintiffs Gerritsen and Elice's decision to purchase their vehicle. Before making their purchase, Plaintiffs Gerritsen and Elice did an online search for the vehicle, including on "Google" and "Youtube" videos, watched television ads promoting the vehicle, visited Defendant's website to research information about the vehicle, and test drove their vehicle with a dealership salesperson.  None of these sources disclosed any information about the UConnect Defect. Plaintiffs Gerritsen and Elice believed that the Pacifica would be a safe and reliable vehicle. Plaintiffs Gerritsen and Elice also reviewed the vehicle's Monroney Sticker, or "window sticker", which listed official information about the vehicle, but which also made no reference to the UConnect Defect.  Had any of these sources disclosed information about the Uconnect Defect, Plaintiffs Gerritsen and Elice would have seen that information.

24.     FCA's omissions were material to Plaintiffs Gerritsen and Elice. Had FCA disclosed its knowledge of the UConnect Defect before they purchased their vehicle, Plaintiffs Gerritsen and Elice would have seen and been aware of the disclosures. Furthermore, had he known of the UConnect Defect, Plaintiffs Gerritsen and Elice would not have purchased their vehicle, or would have paid less for it.

25.     Plaintiffs Gerritsen and Elice have taken the vehicle back to the dealership multiple times seeking warranty repair of their defective Uconnect system, including on September 12, 2018, at 9,877 miles, when Plaintiffs Gerritsen and Elice delivered their vehicle to West Valley Chrysler Jeep in Canoga Park, CA, an authorized FCA repair facility. They complained of the "REAR TV SCREENS INOP[ERABLE]." In response the dealership did a "REBOOT REAR VRM MODULE. SCREEN STARTED UP. PERFORMED UPDATE VRM MODULE TO ENHANCED FOR REAR SEAT ENTERTAINMENT SYSTEM LOP 18-19-91-9E." Thereafter, the vehicle was returned to Plaintiffs Gerritsen and Elice.

However, the vehicle's UConnect Defect would continue to manifest.

26.     On or about January 7, 2019, at 17, 278 miles, Plaintiffs Gerritsen and Elice returned to West Valley Chrysler Jeep complaining that "REAR VIEW CAMERA INTERMITTENTLY WORKS, UCONNECT WILL NOT CONNECT NOR THE TV MONITORS WILL TURN ON OR SYNC WITH UCONNECT." The technician found that "VRM MODULE NOT RESPONDING…. CHECKED AND FOUDND TSB 08-007018 APPLYTHIS VEHICLE UPDATE SOFTWARE." The technician then "PERFORMED TSB 08-007-18 CHECKED AND UPDATED VRM MODULE SOFTWARE…. LOP # 18-19-91-9E." The vehicle Thereafter, the vehicle was returned to Plaintiffs Gerritsen and Elice. However, the vehicle's UConnect Defect would continue to manifest.

27.     On March 11, 2019, at 21,016 miles, Plaintiffs Gerritsen and Elice again returned to West Valley Chrysler Jeep complaining that "RADIO FREEZES BLUETOOTH MUSIC PAUSES THEATRE MODE VOLUME LOUD FROM REAR SPEAKER RADIO DOES NOT WORK AT TIMES FREEZES." The technician found that the cause was "CUSTOMER SECOND TIME FOR SOME (sp) CONCERN LAST VISIT PERFORMED TSB # 08-007018 REV.A AND CONCERN IS STILL PRESIDENT (sp) RADIO UNIT INTERNALLY FAULTY." The technician then ordered a replacement Radio Unit.  Thereafter, the vehicle was returned to Plaintiffs Gerritsen and Elice. However, the vehicle's UConnect Defect would continue to manifest

28.     Finally, on April 5, 2019, at 22,726 miles, Plaintiffs Gerritsen and Elice returned to West Valley Chrysler Jeep. They complained of "UCONNECT ISSUE. RADIO FREEZES, BLUETOOTH MUSIC PAUSES."  Thereafter, the vehicle was returned to Plaintiffs Gerritsen and Elice. However, the vehicle's UConnect Defect would continue to manifest.

29.     Accordingly, Plaintiffs' vehicle continues to exhibit the UConnect Defect and has never been repaired by Defendant.

30.    At all times, Plaintiffs, like all Class Members, have driven their vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiffs JUSTIN BAGLEY and ELIZABETH BAGLEY**

31.    Plaintiffs Bagley are California citizens who reside in El Cerrito, California.

32.    On or around November 26, 2017, Plaintiffs Bagley purchased a new 2018 Chrysler Pacifica equipped with UConnect from Walnut Creek Chrysler Jeep Dodge Ram, an authorized FCA dealer in Walnut Creek, California.

33.    Plaintiffs Bagley purchased their vehicle primarily for personal, family, or household use.

34.    Passenger safety and vehicle reliability were important factors in Plaintiffs Bagley's decision to purchase their vehicle. Before making their purchase, Plaintiffs Bagley did general online search for the vehicle, watched television ads promoting the vehicle, saw the vehicle on television shows, visited Defendant's website to research information about the vehicle, and test drove their vehicle with a dealership salesperson.  None of these sources disclosed any information about the UConnect Defect. Plaintiffs Bagley believed that the Pacifica would be a safe and reliable vehicle. Plaintiffs Bagley also reviewed the vehicle's Monroney Sticker, or "window sticker", which listed official information about the vehicle, but which also made no reference to the UConnect Defect.  Had any of these sources disclosed information about the Uconnect Defect, Plaintiffs Bagley would have seen that information.

35.    FCA's omissions were material to Plaintiffs Bagley. Had FCA disclosed its knowledge of the UConnect Defect before they purchased their vehicle, Plaintiffs Bagley would have seen and been aware of the disclosures. Furthermore, had he known of the UConnect Defect, Plaintiffs Bagley would not have purchased their vehicle, or would have paid less for it.

36.    Plaintiffs Bagley have taken the vehicle back to the dealership multiple

times seeking warranty repair of their defective Uconnect system, including on September 7, 2018, at 7,920 miles, Plaintiffs Bagley visited Hilltop Chrysler Jeep Dodge Ram, and authorized FCA repair facility in Richmond, CA, to have maintenance performed and complaining that the navigation system dies intermittently, with the screen going black or bright blue, the system resetting, and the back-up camera going black. The dealership claimed to be unable to duplicate the concern and returned the vehicle to Plaintiffs Bagley unrepaired.

37.     Thereafter, on December 13, 2018, at 10,712 miles, Plaintiffs Bagley returned to Hilltop Chrysler Jeep Dodge Ram to have another maintenance performed and complaining of the same issues. Again, the dealership returned their vehicle to them without any repair and claiming to be unable to duplicate the concern.

38.     Then on May 14, 2019, at 14,218 miles, Plaintiffs would again return to Hilltop Chrysler Jeep Dodge Ram with the same complaint of the UConnect Defect. The dealership again claimed that the UConnect system was operating properly but updated dated radio software per TSB 08-050-18-REV.A. The vehicle was once again returned to Plaintiffs Bagley unrepaired.

39.     Finally, in February of 2020, Plaintiffs Bagley would make another attempt to complain of the UConnect Defect during a maintenance visit. On this occasion, dealer personnel informed them that FCA is aware of the issue but that there is no fix available, and that the dealership would inform Plaintiffs Bagley once the dealership itself knows more.

40.     Accordingly, Plaintiffs' vehicle continues to exhibit the UConnect Defect and has never been repaired by Defendant.

41.     At all times, Plaintiffs, like all Class Members, have driven their vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff MARCUS SWINDLE**

42.     Plaintiff Marcus Swindle is a citizen of California who resides in

Moreno Valley, California.

43.     On or around June 2019, Plaintiff Swindle purchased a certified pre-owned 2017 Chrysler 300S, equipped with a UConnect, from Moss Bros Chrysler Dodge Jeep Ram ("Moss Bros"), an authorized FCA dealership in Moreno Valley, CA.

44.     Plaintiff Swindle purchased his vehicle primarily for personal, family, or household use.

45.     Passenger safety and vehicle reliability were important factors in Plaintiff Swindle's decision to purchase his vehicle. Before making his purchase, Plaintiff Swindle did an online search for the vehicle, including on "Google", researched the vehicle on Kelley Blue Book visited the dealership's website to research information about the vehicle, and test drove his vehicle with a dealership salesperson.  None of these sources disclosed any information about the UConnect Defect. Plaintiff Swindle believed that the Chrysler 300S would be a safe and reliable vehicle. Plaintiff Swindle also reviewed the vehicle's Monroney Sticker, or "window sticker", which listed official information about the vehicle, but which also made no reference to the UConnect Defect.  Had any of these sources disclosed information about the UConnect Defect, Plaintiff Swindle would have seen that information.

46.     FCA's omissions were material to Plaintiff Swindle. Had FCA disclosed its knowledge of the UConnect Defect before Plaintiff Swindle purchased his vehicle, Plaintiff Swindle would have seen and been aware of the disclosures. Furthermore, had he known of the UConnect Defect, Plaintiff Swindle would not have purchased his vehicle, or would have paid less for it.

47.     Within two weeks of purchasing his vehicle, Plaintiff Swindle observed his UConnect malfunctioning.  In particular, the screen in UConnect device that displays, among other things, the backup camera would, without input from any passenger in the vehicle, turn black and reboot. This malfunction

occurred frequently.  Often more than once during a single trip and as often as weekly.

48.    In addition, Plaintiff Swindle's backup camera system regularly fails produce audible warnings to indicate proximity to other vehicles, people or objects, which causes Plaintiff to feel unsafe relying on the backup camera display while operating the vehicle in reverse.

49.    On or around early August of 2019 Plaintiff Swindle was having his oil changed at a local shop. The personnel noted that the screen turned black and they were pressing buttons for 20 mins but were unable to turn it back on.  When Plaintiff Swindle plugged his phone in, the screen rebooted.

50.    Because the UConnect in his vehicle was malfunctioning, Plaintiff Swindle took the vehicle to Moss Bros on August 16, 2019, at 52,768 miles, to obtain repair under FCA's warranty. However, Plaintiff Swindle was informed by a representative of Moss Bros that they could not replicate Plaintiff Swindle's complaints, noted a lack of diagnostic trouble codes, and informed him that no update was available. The vehicle was returned to Plaintiff Swindle with no repairs.

51.    Plaintiff Swindle also sought repair of his UConnect while taking his Chrysler 300S in for a regular maintenance checks on December 19, 2019 (at 61,654 miles). The dealership again noted a lack of diagnostic trouble codes, and informed him that no update was available. The vehicle was returned to Plaintiff Swindle with no repairs.

52.    Because Moss Bros refused to repair Plaintiff Swindle's UConnect unless they observed the malfunction, despite repeated complaints to the dealership, Plaintiff Swindle's UConnect system continues to malfunction without remedy.

53.    Because Plaintiff Swindle's UConnect malfunctions intermittently, in an effort to satisfy the dealerships' requirement that they observe the Uconnect

malfunction prior to performing repairs, Plaintiff Swindle took a video of his UConnect malfunctioning.

54.     On April 22, 2020, Plaintiff Swindle returned to Moss Bros to convince the dealership that the UConnect system in his vehicle required repair by showing a service technician the video Plaintiff Swindle took of his UConnect system malfunctioning.

55.     After viewing the video, the Moss Bros service technician refused to repair Plaintiff Swindle's UConnect system.  The service technician informed Plaintiff Swindle that the dealership would not repair his UConnect system, unless a representative of the dealership witnessed the malfunction happen while in the vehicle.

56.     Plaintiff's vehicle continues to exhibit the UConnect Defect and has never been repaired by Defendant.

57.     At all times, Plaintiff, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**<u>Defendant</u>**

58.     Defendant FCA US is a limited liability company organized and in existence under the laws of the State of Delaware and registered to do business in the State of California. FCA US's principal place of business is in Michigan, as its Corporate Headquarters are located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.  FCA US designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in California. FCA US is the warrantor and distributor of the Class Vehicles in the United States.

59.     At all relevant times, FCA US was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in Los Angeles County and throughout the United States of America.

## JURISDICTION

60. This is a class action.

61. Members of the proposed Class are citizens of states different than Defendant.

62. On information and belief, there are 100 or more class members and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

63. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

64. FCA, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate. Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

65. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside in the County of Los Angeles, California. In addition, Plaintiffs' Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action, is situated in Los Angeles County, California. It is attached as Exhibit 1.

## FACTUAL ALLEGATIONS

66. FCA's predecessor, Chrysler Group, first introduced the UConnect in 2002 as an aftermarket Bluetooth system that could be factory-installed. "'We wanted a name that is easy to remember and truly represents our system'" said Wolfgang Bernhard, Chrysler Group Chief Operating Office. 'With U-Connect, the central focus is "U", the user. Our system provides exactly what Chrysler Group customers are looking for – affordable and flexible services that match their specific

lifestyles.'"[3]

67.    Thereafter, Chrysler Group first equipped its UConnect system in Chrysler vehicles in 2004. Chrysler Group touted the Uconnect system as an innovative new technology to be introduced in the 2005 Chrysler 300 that was "integrated into the vehicle's electrical architecture." The company explained that the Uconnect system promotes "a flexible, 'take-it-anywhere' sense of freedom, so customers are not tied to their vehicles." "'Uconnect is about safety, freedom, flexibility and affordability,' said Jack Withrow, Director – Vehicle Entertainment and Communications, Chrysler Group." UConnect was specifically marketed as by Chrysler Group as "adap[tive] to the users' specific needs and lifestyles."[4]

68.    In 2008, Chrysler, LLC, another predecessor of FCA and successor entity to Chrysler Group, bundled "innovative consumer technologies under one umbrella – 'uconnect.' The function of the feature is directly in the name – uconnect phone, uconnect tunes, uconnect gps, uconnect studios and uconnect web." "'We set out to connect customers to the things that matter most to them' said Deborah Meyer, Vice President and Chief Marketing Officer – Chrysler LLC. 'The role for "uconnect" in the 2009 model year places the focus on the customer experience and how the features will make their life easier.'"[5]

69.    As technology advanced, so too did UConnect. In 2011, FCA released the next evolution of UConnect, called UConnect Touch. "Customer input – from technophobes as well 'power techies' – is crucial to the ongoing development of Uconnect systems in Ram Truck, Dodge, Chrysler and Jeep Vehicles. Prior to designing the Uconnect Touch system… engineers collected feedback from

---

[3] "Chrysler Group Announces Name of In-Vehicle Communications System," Crystal Mountain Group, January 9, 2002; https://media.fcanorth america.com/newsrelease.do?id=806&mid=102

[4] "Innovative Technologies Available on the 2005 Chrysler 300," Bayus, Beth Ann, dated March 1, 2004; https://media.fcanorthamerica.com/news release.do?id=80&mid=102

[5] "Chrysler LLC Launches Umbrella 'uconnect' Name for Connectivity Technologies," June 26, 2008; https://media.fcanorthamerica.com/news release.do?id=7955&mid=102.

customers saying they wanted systems that are easy to use, capable and don't district from their primary task of driving."[6]

70.   According to Mark Zenios, Head of UConnect Systems and Services, Chrysler Group, LLC, "'Chrysler Group has listened to its customers to understand the types of technologies people want in their vehicles…. Uconnect offers communication and entertainment systems that are easy to learn, easy to use and enable the driver and passenger to stay connected and entertained in a safe and responsible manner while on the road.'"[7] He also said that "'Chrysler Group has established three pillars as the foundation of Uconnect: speed, accuracy and ease-of-use…. The goal is to provide drivers with a variety of ways to quickly connect with and easily control the information they want and need, while keeping them focused on the primary task of driving.'"[8]

71.   FCA released the fourth generation of the UConnect in the 2015 Chrysler 300, dubbed the "UConnect 8.4A" and premium "UConnect 8.4AN" systems with 8.4-inch touchscreen interfaces. "The new 2015 Chrysler 300 is loaded with an array of state-of-the-art, innovative and easy-to-use features and services designed to keep consumers connected, engaged and informed, while keeping their hands on the wheel and eyes on the road." Alan Amici, Head of UConnect Systems and Services said that FCA's goal was to "provide drivers with a variety of ways to quickly connect with, and easily control, the information they want and need, while keeping them focused on the primary task of driving."[9]

---

[6] "Customers Drive Development of Uconnect Touch," Mayes, Eric, June 21, 2011; https://media.fcanorthamerica.com/newsrelease.do?id=11011&mid=102

[7] "Chrysler Group LLC Debuts New Uconnect Mobile Exhibit at 2012 International Consumer electronics Show," Mayne, Eric and Alyse Nagode, January 6, 2012; https://media.fcanorthamerica.com/newsrelease.do?id= 11868&mid=102.

[8] "New Uconnect Access Has Power to Please, With Ease," Mayne, Erick, September 1, 2012; https://media.fcanorthamerica.com/newsrelease.do?id= 12964&mid=102.

[9] "New 2015 Chrysler 300 Offers Latest, Innovative Uconnect Systems and Services," Deneau, Rick, November 19, 2014,

72.   With the 2017 Chrysler Pacifica, FCA expanded the UConnect system to include what FCA called "UConnect Theater" which was a rear seat entertainment system using the UConnect technology providing two 10-inch touchscreens located on the back of the front seat headrests, in addition to the 8.4-inch UConnect 8.4 and 8.4N systems utilized by the driver.[10]

73.   FCA is currently working on their next iteration of the UConnect, called "Uconnect 5" because as FCA's UConnect website states the "UConnect system is always evolving to help meet your safety, security, information and lifestyle needs."[11] However, on information and belief, the Class Vehicles are all equipped with the fourth-generation systems.[12]

74.   Though marketed as a technological marvel, that provides ease, safety and piece-of-mind for purchasers, the Uconnect system was anything but. In fact, prior to the fourth generation units, and exclusively based on publicly available information, Defendant issued two (2)[13] Technical Service Bulletins ("TSBs"), manufacturer communications or recalls for the first generation of UConnect since

---

https://media.fcanorthamerica.com/newsrelease.do?id=16180&mid=102

[10] "All-new 2017 Chrysler Pacifica Offers Latest, Innovative Uconnect Systems and Services," Kiino, Ronald and Kristin Starnes, January 11, 2016; https://media.fcanorthamerica.com/newsrelease.do?id=17220&mid=102

[11] https://www.chrysler.com/uconnect.html#systems (last accessed May 29, 2020)

[12] "FCA All-new Uconnect 5 Global Platform Is the Most Advanced Uconnect System Ever: Powerful, Personalized, Connected and Easy to Use," Cappa, Nick, January 20, 2020; https://media.fcanorthamerica.com/newsrelease.do?id=21506&mid=102

[13] NHTSA ID Number 10139704; Manufacture Communication Number 08-069-14 dated August 21, 2014 ("UConnect Hands Free Module Fails To Respond Due To Module Lock Up") which superseded Service Bulletin 08-014-06 dated March 16, 2006.

SECOND AMENDED CLASS ACTION COMPLAINT

its release, seven (7)[14] for the second generation since its release, and fourteen (14)[15] for the third generation since its release. Though touted as upgrades to prior generations, it seems that the UConnect was actually getting worse, culminating in its worst iteration of all, the one in the putative Class Vehicles.

75. The fourth generation has been subject to at least seventeen (17)[16] TSBs manufacturer communications, or recalls since its release, all of which are described in detail below. Several of these specifically contemplate safety-related failures like loss of backup camera, which in 2018 the National Highway Traffic Safety Administration ("NHTSA") mandated. In NHTSA's own words:

"A rearview video system (RVS), also known as a backup camera, is a *safety* technology that helps prevent back-over crashes and protect our most

---

[14] NHTSA ID Number 10121846, Manufacturer Communication Number 9003220 dated November 30, 2016 (involving gloss of Bluetooth, Hand-Free Calling, and/or Voice Commands); NHTSA ID Number 10140254, Manufacturer Communication Number Z5091195A$ dated May 4, 2016 (*same*); NHTSA ID Number 10058299; Manufacturer Communication Number SB-08-055-15REVA dated August 13, 2015, superseding Service Bulletin 08-055-15 dated May 16, 2015 (involving various failures including loss of radio reception, muted audio, loss of screen, loss of review camera, frozen screens, incorrect maps graphics, etc.); NHTSA ID Number 10062148; Manufacturer Communication Number 08-028-14REV.A dated September 12, 2014, superseding Service Bulletin 08-028-14 Dated March 07, 2014 and replacing Service Bulletin 08-050-13 dated July 11, 2013 (involving various failures including screen going blank, rear view camera going blank, frozen interface, incorrect map icons, navigation icons going backwards, etc.)

[15] NHTSA ID Number 10166584, Manufacturer Communication Number 08-080-19 dated August 16, 2019, superseding Service Bulletin 08-080-18, dated June 12, 2018 (Hands-free module failures and enhancements); NHTSA ID Number 10121797, Manufacturer Communication Number 08-055-17 REV.A dated September 15, 2017, superseding Service Bulletin 08-055-17 (*same*); NHTSA ID Number 10121670, Manufacturer Communication Number 68234120A$ dated July 13, 2016, superseding number 68234120A dated April 20, 2016 (Hands free inoperative, radio inoperative, loss of screen, touchscreen display malfunctioning); NHTSA ID Number 10159965, Manufacturer Communication Number 08-114-15 REV A dated November 17, 2015, superseding Service Bulletin 08-114-15 dated November 17, 2015 (display going blank, skipped channels, back up display may not turn off); NHTSA ID Number 10074618, Manufacturer Communication Number 08-033-15REV.B dated November 13, 2015, superseding Service Bulletin 08-033-15 REV.A dated August 11, 2015 (Display goes blank, radio intermittent reset, navigation intermittent reset); NHTSA ID Number 10144865, Manufacturer Communication Number 08-032-15 dated March 31, 2015, superseding Service Bulletin 08-066-14 dated August 8, 2014 (*same*); NHTSA ID Number 10139696, Manufacturer Communication Number 08-030-14 REV.A dated August 15, 2014, superseding Service Bulletin 08-030-14 dated March 11, 2014 (Radio and Navigation display lock up and go blank, etc.)

[16] *See* ¶ 96 below.

vulnerable people – children and senior citizens. By providing an image of the area behind the vehicle, backup cameras help drivers see behind the vehicle.

NHTSA went so far as to refer to backup cameras as "lifesaving technology."[17]

76.     The illustrations below depict the UConnect 8.4 in the Class Vehicles UConnect Theater, which have been nothing but problematic.



---

[17] https://www.nhtsa.gov/equipment/safety-technologies#backing-parking-30656





77.   Specifically, on information and belief, the Uconnect system is designed and or manufactured with screens, including their operating software, that suffer from freezing, loss of back up camera functionality, loss of navigations, black screens, repeated unintentional reboots, and general lack of operation. The UConnect Defect results in the need for frequent software updates and expensive

replacements of screens and related components.

**The UConnect Defect Poses a Serious Safety Concern**

78. The UConnect Defect is material to consumers because it presents a serious safety concern. Class Members have repeatedly reported disturbing failures to the National Highway Traffic Safety Administration ("NHTSA"). This frequently involves screens going black, loss of backup cameras, and loss of navigation. The following are complaints reflecting the safety risk posed:

```
Date of Complaint:      January 16, 2018
Date of Incident:       January 9, 2018
NHTSA ID No.:           11062977
VIN:                    2C4RC1EG9JR****
Vehicle Type:           2017 Chrysler Pacifica
```

WHEN BACKING UP IN A NEW POORLY LIGHTED PARKING DECK, THE SAFETY BRAKING SYSTEM AND BACK UP CAMERA WITH ASSOCIATED WARNING BEEPS DID NOT ENGAGE. THE RESULTING CRASH DAMAGED THE BUMPER, REAR LIFTGATE, REAR WINDOW, AND ME.*BF *TR

```
Date of Complaint:      September 16, 2019
Date of Incident:       July 17, 2019
NHTSA ID No.:           11255890
VIN:                    2C4RC1GG6JR****
Vehicle Type:           2018 Chrysler Pacifica
```

… 3 TIMES ALREADY WHEN I PUT MY CAR IN REVERSE MY BACKUP CAMERA COMES ON BUT DONT GO OFF WHEN I PUT IT IN DRIVE. SO WHILE IM DRIVING DOWN THE ROAD MY BACKUP CAMERA IS ON AND IS VERY DISTRACTING AND DANGEROUS...

```
Date of Complaint:      November 20, 2017
Date of Incident:       November 4, 2017
NHTSA ID No.:           11047511
VIN:                    2C4RC1EG3HR****
Vehicle Type:           2017 Chrysler Pacifica
```

INFOTAINMENT SCREEN FREEZES AND/OR JUMPS AROUND AND WILL NOT LET THE USER CHANGE TEMPERATURE CONTROLS, ADJUST RADIO FUNCTIONS, ALLOW HANDS-FREE CALLS, OR ACCEPT ANY INPUTS AT ALL. THIS CREATES A DISTRACTING AND EXTREMELY FRUSTRATING EXPERIENCE WITH ABSOLUTELY NO WAY TO CONTROL THE                                                    SYSTEM.

THIS ISSUE HAS BEEN PRESENT SINCE PURCHASING THE VEHICLE IN MARCH2017. EVEN AFTER NOTIFYING FCA

ABOUT THE ISSUE THROUGH THE DEALER, UCONNECT WEB CUSTOMER SERVICE PORTAL, AND CHRYSLER CARES CONTACTS IT IS STILL UNRESOLVED. A SOFTWARE UPDATE RELEASES IN LATE SEPT 2017 FAILED TO CORRECT THE ISSUE.

Date of Complaint:      May 24, 2018
Date of Incident:       December 10, 2017
NHTSA ID No.:           11097723
VIN:                    2C4RC1N77JR****
Vehicle Type:           2018 Chrysler Pacifica

VEHICLE UCONNECT SCREEN LOCKS ONTO FORWARD IMAGE WHILE MOVING FORWARD DOWN THE ROAD OR GOES BLACK ELIMINATING THE ABILITY TO ACCESS ANY OF THE CLIMATE CONTROL OR SOS FEATURES. EXTREMELY DISTRACTING AND REQUIRES VEHICLE TO BE PULLED OVER AND RESTARTED TO CLEAR.

Date of Complaint:      April 16, 2019
Date of Incident:       October 27, 2018
NHTSA ID No.:           11196663
VIN:                    2C4RC1EG2JR****
Vehicle Type:           2018 Chrysler Pacifica

THE DRIVERS SCREEN (NAVIGATION , BACK UP CAMERA, DVD,ETC) FREEZES REGULARLY. THIS MEANS THAT OFTEN THE BACKUP CAMERA IS UNAVAILABLE, AT TIMES THE MOVIE SHOWS EVEN WHILE DRIVING. I HAVE REPORTED IT SEVERAL TIMES TO CHRYSLER'S UCONNECT TEAM WITH NO RESOLUTION. MY CASE MANAGER IS NO LONGER ANSWERING MY CALLS. I HAVE VIDEOS OF THE MALFUNCTION. THE DEALERSHIP HAS ASKED ME TO BRING THE CAR IN 5 TIMES ALREADY, WITH NO RESOLUTION, BUT THEIR "PLAN" IS TO JUST HAVE ME KEEP BRINGING IT IN BUT SAID THEY CANNOT REPLACE THE SCREEN /DEVICE. IT IS A SAFETY ISSUE THAT I CANNOT RELIABLY ACCESS MY REAR CAMERA OR CHANGE APPLICATIONS. I HAVE VIDEOS OF MULTIPLE IMSTAMCES

Date of Complaint:      August 2, 2019
Date of Incident:       June 20, 2019
NHTSA ID No.:           11241242
VIN:                    2C4RC1L79JR****
Vehicle Type:           2018 Chrysler Pacifica

WHILE DRIVING ON A HIGHWAY DURING POURING RAIN, WITH WIPERS ON HIGH AND HEAD LIGHTS ON, DASH AND TOUCH SCREEN WENT OFF/BLACK FOR UP TO 15 MINUTES THEN TURNED BACK ON AGAIN. THIS OCCURRED THREE TIMES WHILE DRIVING. I WAS UNABLE TO PULL OVER ON THE THRUWAY AND WAS UNABLE TO ASSESS IF MY HEAD LIGHTS WERE AFFECTED AS WELL. WE HAD BEEN DRIVING ABOUT AN HOUR WHEN THIS OCCURRED. THE CAR HAD

BEEN CHARGED FULLY BEFORE BEGINNING OUR TRAVELS THAT DAY.

Date of Complaint:       September 5, 2019
Date of Incident:        September 5, 2019
NHTSA ID No.:            11253449
VIN:                     2C4RC1GG0HR****
Vehicle Type:            2017 Chrysler Pacifica

BACK UP CAMERA HAS START TO MALFUNCTION. MORE TIMES THAN NOT WHEN YOU GO INTO REVERSE THE CAMERA EITHER COMES UP BLACK, BLACK WITH WARNING LINES, BLUE SCREEN, FUZZY PICTURES, GREAT PICTURES THEN YOU MOVE AND IT FREEZES. THIS IS BECOMING RIDICULOUS WITH A PRETTY MUCH BRAND NEW VEHICLE. NEEDS TO BE ADDRESSED AND FIXED PROPERLY.

Date of Complaint:       July 22, 2019
Date of Incident:        July 1, 2019
NHTSA ID No.:            11233935
VIN:                     2C4RC1EG5JR****
Vehicle Type:            2018 Chrysler Pacifica

THE ELECTRONICS THROUGH UCONNECT SHUT OFF RANDOMLY OR WILL NOT ALL WORK RANDOMLY. WE HAVE HAD THE SOFTWARE UPDATED BY OURSELVES AND THE DEALERSHIP ON MULTIPLE OCCASIONS. WHILE DRIVING OR IN PARK.

Date of Complaint:       June 18, 2019
Date of Incident:        May 31, 2019
NHTSA ID No.:            11182730
VIN:                     2C4RC1BG3HR****
Vehicle Type:            2017 Chrysler Pacifica

RADIO SCREEN WENT BLACK. NOTHING CONNECTED WITH SCREEN CAN BE USED (RADIO, BACKUP CAMERA, CLIMATE CONTROL, ETC.

Date of Complaint:       February 27, 2019
Date of Incident:        February 19, 2019
NHTSA ID No.:            11221047
VIN:                     2C4RC1EG3HR****
Vehicle Type:            2017 Chrysler Pacifica

THE UCONNECT SYSTEM HAS GONE OUT IN MY CAR ( SCREEN GOES BLACK) OVER A DOZEN TIMES IN 2 YEARS. WE ARE UNABLE TO USE FEATURES SUCH AS BACKUP CAM, TEMP CONTOLS, NAVIGATION, RADIO ETC. IT HAS BEEN TO THE DEALER 6 TIMES AND NO PERMANENT FIX HAS BEEN FOUND. LAST WEEK I RE-SET THE FUSE IN ORDER TO GET IT TO WORK

Date of Complaint:       August 15, 2018
Date of Incident:        April 1, 2018

NHTSA ID No.:          11120139
VIN:                   N/A
Vehicle Type:          2017 Chrysler 300

BACK UP CAMERA NOT WORKING, HAS BEEN TO THE SHOP TWICE FOR REPAIR. 1ST TIME WAS SOFTWARE UPDATE, DIDN'T RESOLVE AS STILL WORKING RANDOMLY, 2ND TIME U05 RECALL , AGAIN DID'T WORK, WILL BE TAKING TO DEALERSHIP AGAIN FOR RESOLUTION. STARTED DAY AFTER PURCHASE, AND HAS BEEN GOING ON NOW 4 MONTHS

79.    In addition to sudden failures, the UConnect Defect presents a further safety concern because it causes the driver to lose concentration on the road to address the loss of navigation, blacked screens, loss of radio functionality, among other failures, while driving.

**FCA Had Superior and Exclusive Knowledge of the UConnect Defect**

80.    Since 2017, FCA has designed, manufactured, distributed, sold, and leased the Class Vehicles. However, the fourth generation of UConnect was first revealed and equipped in vehicles in 2015. In fact, FCA issued the first communication to dealers regarding the UConnect Defect on in August of 2016, well in advance of the Class Vehicles being offered for sale on the market.

81.    Based on publicly available information, these are the relevant TSBs, manufacturer communications and/or recalls issued by FCA in chronological order:

(a) August 31, 2016, GPOP – Issue Review System for Part Number 682271688A$ for: Rear Seat Entertainment System Video Routing Module, requiring a check of the software in the radio head unit prior to replacing the Video Routing Module.

(b) June 28, 2017, GPOP – Issue Review System 9003749 for: requesting that prior to replacing a UConnect for lock up, blank screen, or no sound, to perform a vehicle battery test.

(c) February 1, 2017, Service Bulletin 08-007-17 REV.A for, among other things: radio resetting, radio controls and

touchscreen freezing up or becomes inoperative, rear view camera does not display on screen, inaccurate location of vehicle on the navigation screen, map screen does not return after rear view camera clears, navigation GPS not available, no sound or navigation when the radio is in customer mode, when making an SOS call the display shoes the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(d) May 4, 2017, Service Bulletin 08-007-17 REV.B for, among other things: radio resetting, radio controls and touchscreen freezing up or becomes inoperative, rear view camera does not display on screen, inaccurate location of vehicle on the navigation screen, map screen does not return after rear view camera clears, navigation GPS not available, no sound or navigation when the radio is in customer mode, when making an SOS call the display shows the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(e) May 12, 2017, Service Bulletin 08-007-17 REV.C for, among other things: radio resetting, radio controls and touchscreen freezing up or becomes inoperative, rear view camera does not display on screen, inaccurate location of vehicle on the navigation screen, map screen does not return after rear view camera clears, navigation GPS not available, no sound or navigation when the radio is in customer mode, when making an SOS call the display shoes the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

SECOND AMENDED CLASS ACTION COMPLAINT

(f) August 10, 2017, Service Bulletin 08-007-17 REV.E for, among other things: radio resetting, radio controls and touchscreen freezing up or becomes inoperative, rear view camera does not display on screen, inaccurate location of vehicle on the navigation screen, map screen does not return after rear view camera clears, navigation GPS not available, no sound or navigation when the radio is in customer mode, when making an SOS call the display shoes the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(g) September 8, 2017, Service Bulletin 08-007-17 REV.F for, among other things: Radio freezes and resets after start-up, navigation will not load when selected on the radio screen, rear view camera does not displace on the screen, applications not launching from the app screen, inaccurate location of the vehicle on navigation map, map screen does not return after rear view camera clears, not sound or navigation when the radio is in customer mode, when making an SOS call the display shows the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(h) September 14, 2017, Service Bulletin 08-007-17 REV.G for, among other things: Radio freezes and resets after start-up, navigation will not load when selected on the radio screen, rear view camera does not displace on the screen, applications not launching from the app screen, inaccurate location of the vehicle on navigation map, map screen does not return after rear view camera clears, Navigation GPS not

available, when making an SOS call the display shows the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(i) February 19, 2019, Service Bulletin 08-016-19 for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(j) March 21, 2019, Service Bulletin 08-016-19 REV.A for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(k) April 10, 2019, Service Bulletin 08-016-19 REV.B for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(l) April 17, 2019, Service Bulletin 08-016-19 REV.C for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(m)   October 2, 2019, Service Bulletin 08-016-19 REV.D for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

SECOND AMENDED CLASS ACTION COMPLAINT

(n) October 4, 2019, Service Bulletin 08-016-19 REV.E for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(o) October 19, 2019, Service Bulletin 08-016-19 REV.F for, among other things: Audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(p) May 15, 2019, GPOP – Issue Review System 9003710 for: single seat back screen not functional. Requires a check for DTCs in the Video Routing Monitor as well as verifications of connections to the screen before replacing parts.

(q) May 15, 2019, GPOP – Issue Review System 9003596 for: rear seat entertainment system video routing module. Providing steps required prior to replacement of the Video Routing Module when the rear screens re not functioning.

82.     Importantly, these TSBs, manufacturer communications and/or recalls were not, and are not, disseminated to owners or prospective buyers.

83.     Federal law requires automakers like FCA to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

84.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.*

Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety-related. *Id.* Thus, FCA knew or should have known of the many complaints about the UConnect Defect logged by NHTSA Office of Defects Investigation ("ODI"). The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, FCA to the UConnect Defect.

85.    With respect solely to the Class Vehicles, the following are but a few examples of the many complaints concerning the UConnect Defect which are available through NHTSA's website, www.safercar.gov. Many of the complaints reveal that FCA, through its network of dealers and repair technicians, has been made aware of the UConnect Defect. In addition, the complaints indicate that despite having knowledge of the UConnect Defect and even armed with knowledge of the exact vehicles affected, FCA often refused to diagnose the defect or otherwise attempt to repair it while Class Vehicles were still under warranty. When FCA did attempt repairs, it merely replaced the UConnect with a similarly defective UConnect.

Date of Complaint:     March 7, 2018
Date of Incident:      March 1, 2018
NHTSA ID No.:          11076628
VIN:                   2C4RC1GG1HR****
Vehicle Type:          2017 Chrysler Pacifica

LEASED A NEW PACIFICA A FEW MONTHS AGO. AROUND THE END OF FEBRUARY THE VEHICLE STALLED WHILE PARKED. THEN WHILE STARTING UP THE VEHICLE IN MARCH THE VEHICLE INFORMATION SYSTEM SCREEN SHUT OFF FOR NO REASON, THIS INCLUDED SENSORS, BACK UP CAMERAS , NAV , CLIMATE, RADIO ETC.

Date of Complaint:     December 29, 2017
Date of Incident:      October 14, 2017
NHTSA ID No.:          11057493
VIN:                   2C4RC1GG0HR****
Vehicle Type:          2017 Chrysler Pacifica

THE UCONNECT ENTERTAINMENT SYSTEM WILL ALSO MALFUNCTION FROM TIME TO TIME. SEVERAL SOFTWARE

UPDATES HAVE BEEN INITIATED, ADDRESSING WINDOW AND TRANSMISSION CONCERNS ACCORDING TO THE DEALERSHIP'S SERVICE DEPARTMENT. YET, THE VEHICLE DOES NOT FUNCTION PROPERLY, WHERE IDLE AND TRANSMISSION FUNCTIONING OFTEN APPEARS COMPROMISED (ROUGH IDLE, ROUGH SHIFTING, SUDDEN RPM INCREASES AND ACCELERATION BURSTS WHEN SHIFTING FROM REVERSE TO DRIVE). I FEAR THIS CAR IS NOT SAFE FOR MY WIFE AND THREE YOUNG CHILDREN.

Date of Complaint:       September 20, 2017
Date of Incident:        September 6, 2017
NHTSA ID No.:            11024613
VIN:                     2C4RC1BG6HR ****
Vehicle Type:            2017 Chrysler Pacifica

AFTER FOLLOWING GIVEN INSTRUCTIONS MY RADIO UCONNECT SYSTEM HAS BECOME NONFUNCTIONAL

I HAVE BEEN TOLD BY THE MANUFACTURER I HAVE TO WAIT FOR AN UPDATE OR A FIX. IT HAS BEEN OVER A WEEK ALREADY...UPDATED 10/25/17 *BF

Date of Complaint:       August 17, 2017
Date of Incident:        July 1, 2017
NHTSA ID No.:            11016084
VIN:                     N/A
Vehicle Type:            2017 Chrysler Pacifica

MY TOUCH SCREEN IS UNRESPONSIVE THREE FOURTHS OF THE TIME THAT I TRY IT. YOU ARE GOING TO MAKE ME PUT A SPECIFIC DATE HERE BUT THAT DOES NOT APPLY BECAUSE IT'S BEEN SINCE THE BEGINNING AND HERE I AM AND IT RIGHT NOW AND IT'S DOING IT AGAIN.

Date of Complaint:       August 19, 2017
Date of Incident:        August 1, 2017
NHTSA ID No.:            11120139
VIN:                     2C3CCABG1HH****
Vehicle Type:            2017 Chrysler 300

LREAR CAMERA LOCKS UP ON SCREEN AND YOU CAN NOT DO ANYTHING WITH COMPUTER,VEHICLE MUST BE TURNED OFF AND RESTARTED

Date of Complaint:       July 10, 2017
Date of Incident:        April 4, 2017
NHTSA ID No.:            11004078
VIN:                     2C4RC1EG5HR****
Vehicle Type:            2017 Chrysler Pacifica

TL* THE CONTACT OWNS A 2017 CHRYSLER PACIFICA. THE CONTACT STATED THAT THE BACK UP CAMERA DID NOT CEASE TO FUNCTION EVEN AFTER BEING SHIFTED INTO DRIVE. THE FAILURE OCCURRED INTERMITTENTLY. THE VEHICLE WAS TAKEN TO THE ROUTE 1 CHRYSLER DEALER, BUT THE FAILURE COULD NOT BE DUPLICATED. THE

MANUFACTURER WAS NOTIFIED OF THE FAILURE AND STATED THAT NOTHING COULD BE DONE. THE MANUFACTURER INSTRUCTED THE CONTACT TO STOP CALLING AND PROVIDED CASE NUMBER: 31318899. THE FAILURE MILEAGE WAS APPROXIMATELY 16,000.

### Customer Complaints on Third-Party Websites

86.    Consumers similarly complained about the defect on various online forums. Below are some examples.

- Over the air uconnect update caused the radio to freeze.  As a result, the uconnect console screen is frozen  or rather flashes the Chrysler/Sirius logo constantly.  This "update" disabled radio/Bluetooth/electronic controls/navigational/functions.  Chrysler says it sent a "fix" to the dealer.  The dealer says it has not received it.  I am in an endless loop.
I have been driving for weeks without a radio or handsfree or navigational assistance.  I use my phone as a "substitute".  I need to trade this car in.  for all the nice features of a large car, I never would have leased it without radio functions."  (Complaint posted to CarComplaints.com dated September 8, 2017).

- "Our theater system has not worked properly since we purchased the new vehicle the new vehicle 4 months ago.  The car is at the dealership for repair, but the software patches have not worked and have corrupted the entire system.  Chrysler does not know how to fix the problem or what is causing the issue.  My band new $50,000+ vehicle has been sitting at the dealership with no expectation on when the problem will be fixed. (Complaint posted to CarComplaints.com dated April 27, 2018).

- "On numerous occasions the navigation screen would go black or freeze up.  On multiple occasions the uconnect theater would not work.  Everytime we took it to the dealership said it was fine and didn't need investigate the issue.  Recently, we went to the store and made several stops at different stores on our last stop the van would not recognize the keys.  We couldn't lock or unlock the van.  I had to pull our the emergency key to get into the van.  Once inside the van didn't recognize the keys.  I ended up having to google the issue for a work around to get home.  The entire ride there was a display stating that the key was not in the vehicle.  We made on more stop and an left the van running.  Ten minutes later it recognized the key and a uconnect started working again.  The van is a 2018 and less than a year old.  This is unacceptable for a new vehicle.  (Complaint posted to CarComplaints.com dated January 31, 2019).

- "Two wonky situations with Uconnect Theater:
1. The screen displays the backup camera while driving forward under 16/17 MPH then switches to the blue "X" screen of death above 16/17 MPH.  It will flip back and forth depending on the speed driven.  The touchscreen is unusable in this condition.  Nothing seems to fixes the issue except stopping/turning off the van.  No patter as to why this

situation occurs.
2.  If a DVD/bluray is in the van while parked then the van is started while the move continues to play, shortly thereafter, the head-unit displays the blue "x" screen of death.  Nothing seems to fixes the issue except stopping/turning off the van.
It feels lik it's a software issue that can be fixed with an bug fix update.  Asked about this with two difference dealers and they both give the same shoulder shrug."   (Complaint posted to CarComplaints.com dated April 18, 2019.).

- "Technology-wise I give it 2 stars. The screen interface is just ok, it's main issue is glitches.  The backup camera would not work from time to time, volume would get stuck, screens would jump back and forth, sometimes the entire interface will simply reset itself mid-drive.  Talk about distraction."  (Complaint posted to kbb.com dated April 20, 2019).

- "Backup camera is completely black 90% of the time. The rest of the time it works great. Just paid $125 for a diagnostic by the dealer. Dealer says we need a new camera and wiring harness. Cost is about $650 plus tax. Has anybody been here? Thanks, pt."  (Complaint posted to https://www.pacificaforums.com/threads/backup-camera-failure.43955/).

- "This morning was the second time now that our uconnect screen has gone somewhat berserk and won't respond to touch. It just quickly flashes continuously through each of the screens (radio, climate, phone, settings, etc) and won't stop. We've tried turning the screen off, but it just automatically turns itself back on and continues the flashing. We've tried resetting the system and that didn't stop it either. We have to turn the car off completely to get it to stop. When this happens when you're in the middle of a commute, it's extremely frustrating and distracting. Has anyone else experienced this?" (Complaint posted to https://www.pacificaforums.com/threads/uconnect-flashes-through-screens-uncontrollably.21129/#post-272665).

- "Hi All
My 2018 Pacifica Limited is 10 days old (new) and since last night the Uconnect screen has been going on and off in 30 seconds cycles. When it's off, I have no backup camera, no Bluetooth phone connection, no media/radio etc. That's not a nice welcome to a new car
Anyone        had        this?"   (Complaint       posted       to https://www.pacificaforums.com/threads/uconnect-8-4-crashing.30458/#post-399490 on February 11, 2018).

- "I have a 2018 pacifica and the rearview camera doesnt show when in reverse. Not sure if their is a glitch or a software update that I'm missing?"       (Complaint           posted           to https://www.pacificaforums.com/threads/rearview-camera-not-working.40177/ on September 26, 2018).

87.    FCA had superior and exclusive knowledge of the UConnect Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the

1    Class Vehicles.

2        88.    Plaintiffs are informed and believe, and based thereon allege, that

3    before Plaintiffs purchased their respective Class Vehicles, and since early 2015,

4    FCA knew about the UConnect Defect through sources not available to consumers,

5    including pre-release testing data, early consumer complaints to FCA and its

6    dealers, testing conducted in response to those consumer complaints, high failure

7    rates of the UConnect, the data demonstrating the inordinately high volume of

8    replacement part sales, and other aggregate data from FCA dealers about the

9    problem.

10        89.    FCA is experienced in the design and manufacture of consumer

11   vehicles. As an experienced manufacturer, FCA conducts tests, including pre-sale

12   durability testing, on incoming components, including the UConnect, to verify the

13   parts are free from defect and align with FCA's specifications.[18] Thus, FCA knew

14   or should have known the UConnect was defective and prone to put drivers in

15   dangerous situations due to the inherent risk of the UConnect Defect failing and

16   causing the backup camera, navigation, or phone connectivity to be compromised

17   or fail.

18        90.    Additionally, Defendant should have learned of this widespread defect

19   from the sheer number of reports received from dealerships. Defendant FCA's

20   customer relations department, which interacts with individual dealerships to

21   identify potential common defects, received numerous reports regarding the

22   UConnect Defect, which led to the release of the aforementioned TSBs,

23   manufacturer communications and/or recalls.

24        91.    FCA's customer relations department also collects and analyzes field

25   data including, but not limited to, repair requests made at dealerships, technical

26   reports prepared by engineers who have reviewed vehicles for which warranty

27   ──────────────────────────

28   [18]    Akweli    Parker,    *How   Car   Testing   Works*,   HOWSTUFFWORKS.COM,
     http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm
     ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential
     problems of a model before it goes into full production.") (last viewed June 5, 2019).

1   coverage is being requested, parts sales reports, and warranty claims data.

2        92.    Defendant's warranty department similarly analyzes and collects data
3   submitted by its dealerships to identify warranty trends in its vehicles. It is
4   Defendant's policy that when a repair is made under warranty the dealership must
5   provide FCA with detailed documentation of the problem and a complete disclosure
6   of the repairs employed to correct it. Dealerships have an incentive to provide
7   detailed information to Defendant, because they will not be reimbursed for any
8   repairs unless the justification for reimbursement is sufficiently detailed.

9        93.    The existence of the UConnect Defect is a material fact that a
10   reasonable consumer would consider when deciding whether to purchase or lease a
11   Class Vehicle. No consumer would have reason to search for the UConnect Defect
12   in any publicly available resources. Nor should they as they reasonably rely on FCA
13   to either disclose the defect, or sell a vehicle without the UConnect Defect, as FCA
14   is obligated to do by law. Further, even had consumers searched for problems with
15   the UConnect, FCA itself has never publicly or affirmatively disclosed the
16   UConnect Defect. Instead, FCA repeatedly told consumers that the was no defect,
17   that it had repaired the UConnect Defect, or that it was unable to duplicate the
18   Defect. Had Plaintiffs and other Class Members known of the UConnect Defect,
19   they would have paid less for the Class Vehicles or would not have purchased or
20   leased them.

21        94.    Reasonable consumers, like Plaintiffs, expect that a vehicle's
22   UConnect is safe, will function in a manner that will not pose a safety risk, and is
23   free from defects. Plaintiffs and Class Members further reasonably expect that FCA
24   will not sell or lease vehicles with known safety defects, such as the UConnect
25   Defect, and will disclose any such defects to its consumers when it learns of them.
26   They did not expect FCA to conceal and fail to disclose the UConnect Defect to
27   them, and to then continually deny its existence.

28

**FCA Has Actively Concealed the UConnect Defect**

95.    Despite its knowledge of the UConnect Defect in the Class Vehicles, FCA actively concealed the existence and nature of the defect from Plaintiffs and Class Members.  Specifically, FCA failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

> (a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the UConnect;
>
> (b)    that the Class Vehicles, including the UConnect, were not in good in working order, were defective, and were not fit for their intended purposes; and
>
> (c)    that the Class Vehicles and the UConnect were defective, despite the fact that FCA learned of such defects as early as early 2015.

96.    When consumers present their Class Vehicles to an authorized FCA dealer for UConnect repairs, rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the UConnect Defect.

97.    FCA has caused Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' UConnect and/or related components, despite FCA's knowledge of the UConnect Defect.

**FCA Has Unjustly Retained A Substantial Benefit**

98.     On information and belief, Plaintiffs allege that Defendant unlawfully failed to disclose the alleged defect to induce them and other putative Class Members to purchase or lease the Class Vehicles.

99.    Plaintiffs further allege that Defendant thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs'.

100.   As discussed above therefore, Plaintiffs allege that Defendant unlawfully induced them to purchase their respective Class Vehicles by concealing a material fact (the defective UConnect) and that they would have paid less for the Class Vehicles, or not purchased them at all, had they known of the defect.

101.   Accordingly, Defendant's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did - and likely will continue to - deceive consumers, should be disgorged.

## CLASS ACTION ALLEGATIONS

102.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

103.   The Class and Sub-Classes are defined as:

> **Class**:  All persons in California who purchased or leased any 2017-2019 Chrysler Pacifica or Chrysler 300 Vehicles equipped with FCA US LLC's "UConnect" infotainment system ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by FCA US, LLC.

> **CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

> **Implied Warranty Sub-Class**:  All members of the Class who purchased or leased their Class Vehicles in the State of California.

104.   Excluded from the Class and Sub-Classes are:  (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged

herein.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

105.  <u>Numerosity</u>:  Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough, well into the multiple thousands or hundreds of thousands, such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

106.  <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by FCA.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective UConnect and/or its components.  Furthermore, the factual bases of FCA's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

107.  <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually.  These common legal and factual issues include the following:

    (a)    Whether Class Vehicles suffer from defects relating to the Uconnect system;

    (b)    Whether the defects relating to the Uconnect system constitute an unreasonable safety risk;

    (c)    Whether Defendant knew about the defects pertaining to the

UConnect and, if so, how long Defendant has known of the defect;

(d)   Whether the defective nature of the UConnect constitutes a material fact;

(e)   Whether Defendant has had an ongoing duty to disclose the defective nature of the Uconnect system to Plaintiffs and Class Members;

(f)   Whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction;

(g)   Whether Defendant knew or reasonably should have known of the defects pertaining to the Uconnect system before it sold and leased Class Vehicles to Class Members;

(h)   Whether Defendant should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Uconnect system and/or its components;

(i)   Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Uconnect systems and/or its components;

(j)   Whether Defendant breached the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act;

(k)   Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act

(l)   Whether Defendant breached its express warranties; and

(m)   Whether Defendant breached written warranties pursuant to the Magnuson-Moss Warranty Act.

108. <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to vigorously prosecute this action.

109. <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue unabated without remedy or relief.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

**(Violation of California's Consumers Legal Remedies Act,**

**California Civil Code § 1750, *et seq.*)**

**(On Behalf of the CLRA Sub-Class)**

110. Plaintiffs incorporate by reference all other allegations contained in the other paragraphs of this Complaint.

111. Plaintiffs bring this cause of action on behalf of themselves and the CLRA Sub-Class (CLRA Sub-Class).

112. Defendant is a "person" as defined by California Civil Code § 1761(c).

113. Plaintiffs and the CLRA Sub-Class members are "consumers" within

the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

114.   By failing to disclose and concealing the defective nature of the UConnect from Plaintiffs and prospective CLRA Sub-Class members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their UConnect had characteristics and benefits that they do not have, and represented that the Class Vehicles and their UConnect were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

115.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

116.   Defendant knew that the Class Vehicles and their UConnect suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

117.   As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including Plaintiffs, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the UConnect Defect, Plaintiffs and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' UConnect and its components are substantially certain to fail before their expected useful life has run.

118.   Defendant was under a duty to Plaintiffs and the CLRA Sub- Class members to disclose the defective nature of the UConnect and/or the associated repair costs because:

    (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' UConnect;

    (b)   Plaintiffs and the CLRA Sub-Class members could not reasonably have been expected to learn or discover that their

UConnect had a dangerous safety defect until it manifested; and

(c)   Defendant knew that Plaintiffs and the CLRA Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

119.   In failing to disclose the defective nature of UConnect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

120.   The facts Defendant concealed from or failed to disclose to Plaintiffs and the CLRA Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiffs and the CLRA Sub-Class members known that the Class Vehicles' UConnect was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

121.   Plaintiffs and the CLRA Sub-Class members are reasonable consumers who do not expect the UConnect installed in their vehicles to exhibit problems such as the UConnect Defect. This is the reasonable and objective consumer expectation relating to a vehicle's UConnect.

122.   As a result of Defendant's conduct, Plaintiffs and the CLRA Sub-Class members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the UConnect Defect.

123.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and the CLRA Sub-Class members suffered and will continue to suffer actual damages.

124.   Plaintiffs and the CLRA Sub-Class members are entitled to equitable relief.

125.   Plaintiffs provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  Defendant has to date failed to provide

1    appropriate relief for their violations of the CLRA.  Accordingly, Plaintiffs seek

2    monetary, compensatory, and punitive damages, in addition to injunctive and

3    equitable relief.

**SECOND CAUSE OF ACTION**

4

**(Breach of Implied Warranty Pursuant to Song-Beverly**

5

**Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

6

**(On Behalf of the Implied Warranty Sub-Class)**

7

8        126.  Plaintiffs incorporate by reference the allegations contained in the

9    other paragraphs of this Complaint.

10       127.  Plaintiffs bring this cause of action against Defendant on behalf of

11   themselves and the Implied Warranty Sub-Class (IW Sub-Class).

12       128.  Defendant was at all relevant times the manufacturer, distributor,

13   warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

14   know of the specific use for which the Class Vehicles were purchased or leased.

15       129.  Defendant provided Plaintiffs and the Implied Warranty Sub-Class

16   members with an implied warranty that the Class Vehicles and their components

17   and parts are merchantable and fit for the ordinary purposes for which they were

18   sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing

19   reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles

20   and their UConnect suffered from an inherent defect at the time of sale and

21   thereafter and are not fit for their particular purpose of providing safe and reliable

22   transportation.

23       130.  Defendant impliedly warranted that the Class Vehicles were of

24   merchantable quality and fit for their intended use.  This implied warranty included,

25   among other things: (i) a warranty that the Class Vehicles and their UConnect,

26   which were manufactured, supplied, distributed, and/or sold by FCA, would provide

27   safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their

28   UConnect would be fit for their intended use.

131.   Contrary to the applicable implied warranties, the Class Vehicles and their UConnect at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the IW Sub-Class members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective UConnect.

132.   The alleged UConnect Defect is inherent and was present in each Class Vehicle at the time of sale.

133.   As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the UConnect Defect, Plaintiffs and the IW Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' UConnect and/or its components are substantially certain to fail before their expected useful life has run.

134.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## THIRD CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200, *et seq.*)

### (On Behalf of the Class)

135.   Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

136.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

137.   As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including Plaintiffs, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the UConnect Defect, Plaintiffs and the Class members were harmed and suffered actual damages in that the Class Vehicles' UConnect and/or its components are

1   substantially certain to fail before their expected useful life has run.

2   138.  California Business & Professions Code § 17200 prohibits acts of

3   "unfair competition," including any "unlawful, unfair or fraudulent business act or

4   practice" and "unfair, deceptive, untrue or misleading advertising."

5   139.  Plaintiffs and the Class members are reasonable consumers who do not

6   expect their UConnect to exhibit problems such as freezing, loss of back up camera

7   functionality, loss of navigations, black screens, repeated unintentional reboots, and

8   general lack of operation.

9   140.  Defendant knew the Class Vehicles and their UConnect were

10   defectively designed or manufactured, would fail prematurely, and were not suitable

11   for their intended use.

12   141.  In failing to disclose the UConnect Defect, Defendant has knowingly

13   and intentionally concealed material facts and breached its duty not to do so.

14   142.  Defendant was under a duty to Plaintiffs and the Class members to

15   disclose the defective nature of the Class Vehicles and their UConnect because:

16        (a)   Defendant was in a superior position to know the true state of

17              facts about the safety defect in the Class Vehicles' UConnect;

18              and

19        (b)   Defendant actively concealed the defective nature of the Class

20              Vehicles and their UConnect from Plaintiffs and the Class.

21   143.  The facts Defendant concealed from or failed to disclose to Plaintiffs

22   and the Class members are material in that a reasonable person would have

23   considered them to be important in deciding whether to purchase or lease Class

24   Vehicles.  Had they known of the UConnect Defect, Plaintiffs and the other Class

25   members would have paid less for Class Vehicles equipped with the UConnect or

26   would not have purchased or leased them at all.

27   144.  Defendant continued to conceal the defective nature of the Class

28   Vehicles and their UConnect even after Plaintiffs and the other Class members

1  began to report problems.

2      145.   Defendant's conduct was and is likely to deceive consumers.

3      146.   Defendant's acts, conduct, and practices were unlawful, in that they

4  constituted:

5          (a)   Violations of California's Consumers Legal Remedies Act;

6          (b)   Violations of the Song-Beverly Consumer Warranty Act,

7                including California Civil Code §§ 1792 and 1791.1.;

8          (c)   Violations of the Magnuson-Moss Warranty Act; and

9          (d)   Breach of Express Warranty under California Commercial Code

10               § 2313.

11     147.   Defendant's acts, conduct, and practices were unfair because:

12         (a)   the harm to consumers far outweighs the utility of Defendant's

13               conduct, which is solely to increase Defendant's profits at the

14               expense of consumers;

15         (b)   consumers could not reasonably avoid harm, as they are

16               unaware of the UConnect Defect prior to purchase; and

17         (c)   public policy, as set forth in California's Consumers Legal

18               Remedies Act, Song-Beverly Consumer Warranty Act, and

19               Magnuson-Moss Warranty Act, favors consumer protection

20               from Defendant's specific conduct described herein.

21     148.   By its conduct, Defendant has engaged in unfair competition and

22  unlawful, unfair, and fraudulent business practices.

23     149.   Defendant's unfair or deceptive acts or practices occurred repeatedly

24  in Defendant's trade or business and were capable of deceiving a substantial portion

25  of the purchasing public.

26     150.   As a direct and proximate result of Defendant's unfair and deceptive

27  practices, Plaintiffs and the other Class members have suffered and will continue to

28  suffer actual damages.

151.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and the other Class members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**FOURTH CAUSE OF ACTION**

**(Breach of Written Warranty under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2303 *et seq*.)**

**(On Behalf of the Class)**

152.   Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

153.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class against Defendant.

154.   Defendant provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty under state law.

155.   The UConnect and its component parts were manufactured and/or installed in the Class Vehicles by Defendant and are covered by the express warranty.

156.   In a section entitled "What's Covered," Defendant's express warranty provides in relevant part that "The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." The warranty further provides that "You pay nothing for these repairs. These warranty repairs or adjustments—including all parts and labor connected with them—will be made by your dealer at no charge, using new or remanufactured parts."

157.   According to FCA, "The Basic Limited Warranty lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first."

158.   Defendant breached the express warranties by selling and leasing Class Vehicles with the UConnect Defect, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the UConnect and its component parts, and instead, replacing the defective UConnect and its components with equally defective UConnect and components. By simply replacing Plaintiffs' and Class Members' defective UConnect with similarly defective parts, FCA has failed to "repair" the defects as alleged herein.

159.   Plaintiffs and the class were not required to notify FCA of the breach or were excused from doing so because affording FCA a reasonable opportunity to cure its breach of written warranty would have been futile.

160.   Plaintiffs and the Class provided FCA with notice of the issues complained of herein within a reasonable time by presenting their Class Vehicles to authorized FCA dealers for repair of the UConnect defect.

161.   As a direct and proximate cause of Defendant's breach, Plaintiffs and the other Class members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiffs and the other Class members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

162.   Plaintiffs and the other Class members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

### FIFTH CAUSE OF ACTION

### (Breach of Implied Warranty under the Magnuson-Moss Warranty Act,

### 15 U.S.C. § 2303 *et seq*.)

### (On Behalf of the Class)

163.   Plaintiffs incorporate by reference the allegations contained in the

other paragraphs of this Complaint.

164.   Plaintiffs bring this cause of action on behalf of themselves and the Class against Defendant.

165.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

166.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

167.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

168.   FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their UConnect were manufactured, supplied, distributed, and/or sold by FCA would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their UConnect would be fit for their intended use while the Class Vehicles were being operated.

169.   Contrary to the applicable implied warranties, the Class Vehicles and their UConnect at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design of their UConnect.

170.   Defendant's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

171.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

172.   Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class members brought their vehicles in for

1    diagnoses and repair of the UConnect.

2        173.   As a direct and proximate cause of Defendant's breach of implied

3    warranties, Plaintiffs and Class members sustained and incurred damages and other

4    losses in an amount to be determined at trial.   Defendant's conduct damaged

5    Plaintiffs and Class members, who are entitled to recover actual damages,

6    consequential damages, specific performance, diminution in value, costs, attorneys'

7    fees, and/or other relief as appropriate.

8        174.   As a result of Defendant's violations of the Magnuson-Moss Warranty

9    Act as alleged herein, Plaintiffs and Class members have incurred damages.

10                        **SIXTH CAUSE OF ACTION**

11                          **(For Unjust Enrichment)**

12                          **(On Behalf of the Class)**

13       175.   Plaintiffs incorporate by reference the allegations contained in the

14   other paragraphs of this Complaint.

15       176.   Plaintiffs bring this cause of action, in the alternative, on behalf of

16   themselves and the Class.

17       177.   As a direct and proximate result of Defendant's failure to disclose

18   known defects, Defendant has profited through the sale and lease of the Class

19   Vehicles.   Although these vehicles are purchased through Defendant's agents, the

20   money from the vehicle sales flows directly back to Defendant.

21       178.   Additionally, as a direct and proximate result of Defendant's failure to

22   disclose known defects in the Class Vehicles, Plaintiffs and Class Members have

23   vehicles that require repeated, high-cost repairs that can and therefore have

24   conferred an unjust substantial benefit upon Defendant.

25       179.   Defendant has been unjustly enriched due to the known defects in the

26   Class Vehicles through the use of money paid that earned interest or otherwise

27   added to Defendant's profits when said money should have remained with Plaintiffs

28   and Class Members.

1    180.   As a result of the Defendant's unjust enrichment, Plaintiffs and Class
2  Members have suffered damages.

3                              **RELIEF REQUESTED**

4    181.   Plaintiffs, on behalf of themselves and all others similarly situated,
5  request the Court to enter judgment against Defendant, as follows:

6          (a)   An order certifying the proposed Class and Sub-Classes,
7                designating Plaintiffs as named representatives of the Class, and
8                designating the undersigned as Class Counsel;

9          (a)   A declaration that Defendant is financially responsible for
10                notifying all Class Members about the defective nature of the
11                UConnect, including the need for periodic maintenance;

12          (b)   An order enjoining Defendant from further deceptive
13                distribution, sales, and lease practices with respect to Class
14                Vehicles; compelling Defendant to issue a voluntary recall for
15                the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling
16                Defendant to remove, repair, and/or replace the Class Vehicles'
17                defective UConnect and/or its components with suitable
18                alternative product(s) that do not contain the defects alleged
19                herein; enjoining Defendant from selling the Class Vehicles
20                with the misleading information; and/or compelling Defendant
21                to reform its warranty, in a manner deemed to be appropriate by
22                the Court, to cover the injury alleged and to notify all Class
23                Members that such warranty has been reformed;

24          (c)   A declaration requiring Defendant to comply with the various
25                provisions of the Song-Beverly Act alleged herein and to make
26                all the required disclosures as to the Uconnect Defect;

27          (d)   An award to Plaintiffs and the Class for compensatory,
28                exemplary, and statutory damages, including interest, in an

amount to be proven at trial;

(e)    Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

(f)    Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(g)    A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

(h)    An award of attorneys' fees and costs, as allowed by law;

(i)    An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(j)    An award of pre-judgment and post-judgment interest, as provided by law;

(k)    Leave to amend the Complaint to conform to the evidence produced at trial; and

(l)    Such other relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

182.    Pursuant to Federal Rule of Civil Procedure 38(b) and Central District of California Local Rule 38-1, Plaintiffs demand a trial by jury of all issues in this action so triable.

Dated:  June 1, 2020                   Respectfully submitted,
CAPSTONE LAW APC


By:  */s/* Tarek H. Zohdy
         Steven R. Weinmann
         Tarek H. Zohdy
         Cody R. Padgett
         Trisha K. Monesi

HAFFNER LAW PC

By: /s/ Graham G. Lambert
Joshua H. Haffner
Graham G. Lambert
*Attorneys for Plaintiffs and*
*all others similarly situated*

Lawrence Deutsch, Esq.*
Jeffrey Osterwise, Esq.*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
T: (215) 875-3062
F: (215) 875-4604
ldeutsch@bm.net
josterwise@bm.net

* Admitted *pro hac vice*